IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 12, 2006 Session

## STATE OF TENNESSEE v. SHERRY FLOYD McALISTER

**Direct Appeal from the Criminal Court for Perry County**
**No. 897     Donald P. Harris, Judge**

---

**No. M2006-01690-CCA-R3-CD - Filed January 29, 2007**

---

The defendant, Sherry Floyd McAlister, was convicted of attempted first degree murder, a Class A felony, and sentenced as a Range I, standard offender to twenty-five years in the Department of Correction. On appeal, she argues that the trial court erred by imposing an excessive sentence. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Charles S. Kelly, Sr., Dyersburg, Tennessee (on appeal); L. L. Harrell, Jr., Trenton, Tennessee (at trial), for the appellant, Sherry Floyd McAlister.

Robert E. Cooper, Jr., Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Jeffrey L. Long and Stacey B. Edmonson, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The defendant's thirty-one-year-old stepdaughter, Emily Ann Coffman, was stabbed multiple times on August 19, 2004, near the Buffalo River in Perry County. A grand jury indicted the defendant on January 25, 2005, for the attempted first degree murder of Coffman. As the issues raised on appeal only concern sentencing, it is not necessary to set out the evidence presented at trial in great detail.

Coffman testified that, on the day of the offense, she had just finished serving a sentence imposed for violating her probation, and the defendant picked her up "around lunch[time]" at the Wayne County Jail. Coffman stated that the defendant said she wanted to look at the river before

going home and drove to a boat launch area that "had woods around it" where they got out of the car and walked a short distance. Coffman said that she sat down on the trunk of a fallen tree and that the defendant stood behind her, asked her to smell some flowers, and then "stabbed [her] in the back." Coffman then described defending herself against the defendant and said that other people came to her aid before an ambulance transported her to the Linden Hospital where she was then airlifted to Vanderbilt Hospital in Nashville.

Dr. Andrew Averett testified that he treated Coffman at the Linden Hospital emergency room. He said that she had stab wounds to her "left fifth finger," left knee, and "right posterior shoulder area." He said that her hand injury appeared to be "a defensive wound" and that one of her lungs had been punctured as a result of the stab wound in her back. Dr. Averett opined that it was "real unlikely" that the stab wound to the victim's back was self-inflicted because of "the position that your arm would already be in."

Investigator Barry Carroll of the Twenty-First Judicial District Attorney General's Office testified that he found a knife and a loaded .25 caliber pistol in the defendant's car. John O. Marshall testified that, on the day of the incident, he and David Stranghoener were "walking around" near the river when they saw the defendant "dragging [the victim] down the path with the knife in her hand." He said that Stranghoener provided first-aid to the victim while the defendant stood by.

Tyler Kolwyck testified that on the day of the offense he was camping at the Buffalo River with his fiancée. He said that while they were walking near the river, they heard the victim scream "Help me! Help me! She's trying to kill me." He confirmed that at that time, the victim was "sitting on her bottom up against the brush" and that the defendant was standing over her with a knife. They then saw the defendant "dragging [the victim] our way, saying that she's trying to kill herself and all that." After another man "broke them up and stuff," Kolwyck and his fiancée called 9-1-1.

The defendant testified that she had not attempted to kill the victim. She said that she had wanted to go "down [to] the Buffalo River to see what was down there." The defendant stated that she was walking around picking flowers, listening to the victim talk, and when she "turned back around [the victim] was laying [sic] in this clump of trees." She said that they struggled with the knife, which was when Coffman must have sustained the wound in her back "unless she had already stabbed herself."

The trial court held a sentencing hearing on November 18, 2005, at which William Sanders, the Chief of Police for Trenton, Tennessee, testified about the defendant's 1985 conviction for voluntary manslaughter. Over defense counsel's objections, Chief Sanders said that the victim in that case, the defendant's "lover," had been found dead in a motel room with a shotgun wound to the back of the head.

In sentencing the defendant to twenty-five years, the trial court applied three enhancement factors: (1) a previous history of criminal convictions in addition to those necessary to establish the

appropriate range; (6) the personal injuries inflicted upon the victim were particularly great; and (11) the felony resulted in serious bodily injury to another person, and the defendant had previously been convicted of a felony that resulted in death. See Tenn. Code Ann. § 40-35-114(1), (6), (11) (2005).

## ANALYSIS

On appeal, the defendant argues that the trial court erred by imposing an excessive sentence. Specifically, she argues that each of the three enhancement factors was erroneously applied and that the testimony of Chief Sanders should not have been admitted.

Initially, she asserts that "the trial court erred by imposing an excessive sentence upon [the defendant], by allowing into evidence at sentencing hearing [sic] a prior crime in violation of Tennessee Rule of Evidence 404(b)." As Rule 404(b) only precludes evidence of the commission of a prior crime when it is offered "to prove the character of a person in order to show action in conformity with the character trait," Tenn. R. Evid. 404(b) (2005), and it was not offered for this purpose at the defendant's sentencing hearing, this argument is without merit.

Next, the defendant argues "that one previous conviction and no evidence of criminal behavior since 1985 does not make out a 'history,' which is impliedly required to lawfully consider Tennessee Code Annotated [section] 40-35-114(1) as an enhancing factor for sentencing." On the contrary, it was within the trial court's discretion to consider the defendant's prior conviction for manslaughter as an enhancement factor. See State v. Souder, 105 S.W.3d 602, 606 (Tenn. Crim. App. 2002) (finding that the trial court did not abuse its discretion by enhancing the defendant's sentence, in part, because of a single, thirty-five-year-old misdemeanor conviction).

The defendant further contends that the trial court erred by enhancing her sentence through application of Tennessee Code Annotated section 40-35-114(6), by finding that the victim's injuries were particularly great. The defendant argues that under the United States Supreme Court's decision in Blakely v. Washington, the fact that the victim's injuries were particularly great must be found by a jury before it can be used to enhance her sentence. See Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004). However, the Tennessee Supreme Court has ruled that application of the enhancement factors as codified in the Tennessee Criminal Sentencing Reform Act of 1989 does not violate Blakely. State v. Gomez, 163 S.W.3d 632, 661 (Tenn. 2005). Accordingly, the defendant's argument is without merit.

The defendant also argues that "enhancement factor (11) was improperly applied by the trial court in that it is, in itself, an essential element of a charged offense inconsistent with the requirements of Tennessee Code Annotated [section] 40-35-114." As this court has previously held that enhancement factor (11) can be properly applied in sentencing a defendant for attempted first degree murder, this argument is also without merit. See State v. Nix, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995).

In addition, the defendant asserts that allowing Chief Sanders to testify at the sentencing hearing violated Rule 403 of the Tennessee Rules of Evidence because his testimony "served only to unnecessarily prejudice the judge at sentencing when the fact that she had been convicted previously was stipulated by the defense." The State responds that the testimony was relevant both to establish the fact of her prior conviction, as well as with regard to enhancement factor (11), to show, as found by the trial court, that the defendant had "very little regard for human life" and "her incarceration [was] absolutely necessary to protect society from this kind of thing occurring again."

We note that the facts of the defendant's 1985 homicide are set out in the direct appeal of her conviction, State v. McAlister, 751 S.W.2d 436 (Tenn. Crim. App. 1987), the main difference between the reported facts and the testimony of Chief Sanders being that the victim was shot in the back of the head with a rifle rather than a shotgun, as Sanders testified at the sentencing hearing. Given that the trial court determined that the facts of the 1985 offense were relevant to the sentencing of the defendant, especially as to her having little regard for human life, we conclude that the court did not abuse its discretion in allowing this testimony. See State v. Rice, 184 S.W.3d 646, 682 (appx.) (Tenn.), cert. denied, __ U.S. __, 127 S. Ct. 68 (2006).

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE

-4-